PILLSBURY WINTHROP SHAW PITTMAN LLP
BLAINE I. GREEN  #193028
blaine.green@pillsburylaw.com
JEFFREY S. JACOBI  #252884
jeffrey.jacobi@pillsburylaw.com
MATTHEW K. YAN  #257918
matthew.yan@pillsburylaw.com
50 Fremont Street, Fifth Floor
San Francisco, CA  94120-7880
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

Attorneys for Defendant and Third Party Claimant
CHEVRON U.S.A. INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPPI-SOMERSVILLE, INC., SOMERSVILLE-GENTRY, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>TRC COMPANIES, INC.; GBF HOLDINGS LLC, et al.,<br><br>Defendants, | Case No. C 04-2648 SI (consolidated with Case No. C 07-5824 SI)<br><br>**CHEVRON U.S.A. INC.'S NOTICE OF MOTION AND MOTION FOR ORDER DETERMINING GOOD FAITH OF SETTLEMENT**<br><br>Date:    September 22, 2009<br>Time:   11:00 a.m.<br>Dept:    Courtroom 10, 19th Floor<br>Judge:   Hon. Susan Illston |
| SPPI-SOMERSVILLE INC., SOMERSVILLE-GENTRY INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>CHEVRON U.S.A., INC., as successor to Standard Oil of California, Inc.,<br><br>Defendant. | |

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  NOTICE IS HEREBY GIVEN that on September 22, 2009 at 11:00 a.m., or as soon

3  thereafter as the matter may be heard, Defendant CHEVRON U.S.A. INC. ("Chevron") will

4  move for an order determining that the settlement between Chevron and Plaintiffs SPPI-

5  SOMERSVILLE, INC. and SOMERSVILLE-GENTRY, INC. (collectively "Plaintiffs") is

6  in good faith.  This motion ("Motion") will be heard by the Honorable Susan Illston in

7  Courtroom 10 of the United States District Court for the Northern District of California,

8  located at 450 Golden Gate Avenue, San Francisco, California.  Chevron is requesting that

9  the Motion be heard on an expedited basis, such that any oppositions be filed with the Court

10 by 3:00 p.m. on September 21, 2009.  Chevron further requests that Motion be heard

11 concurrently with the good faith motion filed by the City of Antioch (Dkt. 617), which is to

12 be heard at 11:00 a.m. on September 22, 2009.

13 Through this Motion, Chevron, with the support of Plaintiffs, seeks an order by the

14 Court determining that its settlement is in good faith and that all claims against Chevron by

15 non-settling defendants in this matter are barred.  This Motion is sought pursuant to

16 procedures outlined in *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994) and Cal. Code of

17 Civ. Proc. §§ 877 and 877.6.

18 This Motion is based on this Notice, the Memorandum of Points and Authorities

19 below, all pleadings, files, and records herein, and upon such further oral and documentary

20 evidence as may be presented in opposition or reply to the Court at the hearing of the

21 Motion.

22 Dated: September 18, 2009.

23                              PILLSBURY WINTHROP SHAW PITTMAN
                                 BLAINE I. GREEN
24                              JEFFREY S. JACOBI
                                 MATTHEW K. YAN
25

26                              By:        /s/ Blaine I. Green

27                                    Blaine I. Green
                                      Attorneys for Defendant Chevron U.S.A. Inc.
28

701761514v1                     i                    CHEVRON U.S.A. INC.'S MOTION FOR
                                                     GOOD FAITH SETTLEMENT DETERMINATION
                                                     Case No. C 04-2648 SI

**MEMORANDUM OF POINTS AND AUTHORITIES**

I. <u>INTRODUCTION</u>.

Defendant CHEVRON U.S.A. INC. ("Chevron") requests that the Court approve the settlement between Plaintiffs SPPI-SOMERSVILLE, INC. and SOMERSVILLE-GENTRY, INC. (collectively, "Plaintiffs") and Chevron. By this Motion, Chevron requests that the Court enter an order approving the settlement under the Uniform Comparative Fault Act (UCFA), federal common law, and the California Code of Civil Procedure sections 877 and 877.6, and that all claims for contribution, indemnity, or other equitable theories of relief under state and federal law asserted against Chevron by any non-settling parties be barred.

II. <u>BACKGROUND</u>.

A. <u>Facts</u>.

This lawsuit arises from surface trash on, and groundwater contamination of, certain property owned by Plaintiffs in Antioch. The subject property consists of 24 acres ("Property") bounded by Somersville Road on the west, the Contra Costa Canal on the east, and three landfills to the south—the Old Antioch Landfill, the Pittsburg Landfill, and the GBF Landfill. In 1958, the City of Antioch ("Antioch") leased a four-acre parcel of the Property from Chevron's predecessor, Standard Oil Company of California ("Standard Oil"), for $55 annual rent, for the disposal of garbage and refuse ("Parcel 34"). The lease expired after one year. In 1966, Standard Oil sold the 4-acre area (now known as Parcel 34) to Tom Gentry as part of a 450-acre property transaction.

In November 2001, the south bank of Markley Creek suffered a slope failure and sloughed into the creek, exposing municipal waste beneath Parcel 34. In January 2003, the Regional Water Quality Control Board issued a Cleanup and Abatement Order to Tom Gentry California Company ("TGCC"), Antioch, and GBF Holdings, LLC. Plaintiffs purchased the Property from TGCC in 2003 and, along with Antioch, implemented a remediation of Markley Creek. The remediation was completed in late 2008.

B.     Claims Against Chevron.

Plaintiffs filed Case No. C 04-2648 SI in July 2004, claiming that the Property had been contaminated by operations of the immediately adjacent landfills. Plaintiffs sued the owners and operators of the landfills, including Antioch, Pittsburg, TRC Companies, Inc. and GBF Holdings, LLC, Contra Costa Waste Service, Inc., the Garaventas, and others who owner or operated the landfills in the past. Plaintiffs have never alleged that Chevron dumped waste on the Property or contributed to any groundwater contamination. *See, e.g.*, Tenth Consolidated Joint Case Management Conference Statement, Dkt. 520. No party has contended or presented evidence claiming that Chevron was responsible for groundwater contamination on the Property, or that Chevron's involvement in the contamination extended beyond its leasing the Property to Antioch.

Plaintiffs separately sued Chevron in September 2007, Case No. C 07-5824 SI, based on the allegation that Standard Oil had leased the four-acre area of the Property to Antioch for disposal of garbage and refuse. Case No. C 07-5824 SI was subsequently consolidated with Case No. C 04-2648 SI, and Plaintiffs thereafter filed a Master Complaint against Chevron and all other defendants. Plaintiffs sued Chevron on claims for CERCLA, RCRA, federal declaratory relief, continuing trespass, continuing nuisance, negligence and state declaratory relief. All of these claims arose out of Chevron's status as successor to Standard Oil, and Standard Oil's lease with Antioch for disposal of refuse in 1958. In addition, Plaintiffs sued Chevron for non-disclosure of the lease and landfill debris to Tom Gentry in 1966. The Court granted summary judgment to Chevron on this claim. Order re: Summary Judgment Motions, Dkt. 247.

C.     Settlement Agreement Between Plaintiffs And Chevron.

On September 18, 2009, Chevron entered into a Settlement Agreement and Mutual Release of Claims ("Agreement") with the Plaintiffs. *See* Declaration of Blaine I. Green, Ex. A. In exchange for a release of claims and certain other terms and conditions, the Agreement calls for a cash payment to Plaintiffs in the amount of $315,042. *Id.*, at ¶ III.

1   Chevron's payment of the settlement consideration is conditioned on the Court's approval

2   that the settlement is in good faith.  *Id.*, at ¶¶ III, V.

3   When the value of the settlement is considered in light of Plaintiffs' remaining

4   claims against Chevron, the settlement is in good faith and well within the "ballpark" under

5   the factors set forth in *Tech-Bilt, Inc. v. Woodward Clyde & Assocs.*, 38 Cal. 3d 488 (1985).

6   Notably, the $315,042 in cash consideration encompasses nearly the full amount that

7   Plaintiffs paid for Parcel 034:  $318,000.[1]  Further, under the Uniform Comparative Fault

8   Act ("UCFA"), Plaintiffs, not the non-settling defendants, bear the risk of the settlement not

9   being proportionate to Chevron's alleged liability.

10   The Settlement Agreement resolves with finality Chevron's alleged liability under

11   each of Plaintiffs' federal law, state law, and statutory claims.  Chevron seeks an order by

12   the Court approving and confirming the settlement as being in good faith as set forth in the

13   Settlement Agreement.

14   III.   ARGUMENT.

15   A.   The UCFA Applies To Chevron's Agreement With Plaintiffs Resolving

16   Plaintiffs' CERCLA Claims.

17   Federal law determines the effect of partial settlements in CERCLA cases because

18   the actions are based on federal statute.  *Allied Corp. v. Acme Solvent Reclaiming Inc.*, 771

19   F. Supp. 219, 223 (N.D. Ill. 1990).[2]  Although CERCLA does not itself indicate what

20   principles are to guide settlements where the claimant is a private party, nevertheless, in the

21   absence of express statutory guidance, issues regarding settlement and contribution in

---

[1] See Declaration of Blaine I. Green in Support of Motion for Summary Judgment (Dkt. 399), Ex. 14 (Seller's Settlement Statement, Final).

[2] Since federal law controls in determining the effect of partial settlements in CERCLA cases, the provisions of California Code of Civil Procedure § 877 regarding determination of good faith settlement are applicable to any potential state law claims and are only illustrative of the good faith nature of the settlement of the CERCLA claims.

actions arising under CERCLA are governed by the principles of federal common law. *Mardan Corp. v. C.G.C. Music Ltd.*, 804 F.2d 1454, 1457-60 (9th Cir. 1986).[3]

For determining the effect of settlement in a case involving multiple tortfeasors, the Supreme Court has, as a matter of federal common law, adopted the proportionate credit rule. *McDermott, Inc. v. Am CLYDE and River Don Castings, Ltd.*, 511 U.S. 202, 114 S. Ct. 1461, 1470-71 (1994) (choosing the principles embodied in the UCFA). *McDermott* was an admiralty case. However, the decision was not premised on considerations unique to admiralty, but rather upon a detailed analysis of the respective strengths and weaknesses of the proportionate share rule and the *pro tanto* approach. The Court concluded that "the proportionate share approach is superior." *Id.* at 1470. Before *McDermott*, the vast majority of federal courts had "almost unanimously adopted the UCFA" in the context of CERCLA settlements. *See United States v. SCA Servs.*, 827 F. Supp. 526, 534 (N.D. Ind. 1993) (quoting L. Boomgaarden and C. Breer).[4]

Under the UCFA approach, a settling defendant's share of fault is assumed by the settling claimant:

> A release, covenant not to sue, or similar agreement entered into between a claimant and a person liable discharges that person form all liability for contribution, but it does not discharge any other person liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by

---

[3] The modest treatment of private party settlements under CERCLA is complemented by the strong public policy favoring voluntary settlements of litigation in federal court. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989, cert. denied, 498 U.S. 890 (1990); *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983, cert. denied, 467 U.S. 1219 (1984). The general policy in favor of settlements aply with special force in CERCLA cases; Congress explicitly attempted to encourage settlements in CERCLA cases in the 1986 amendments to the statute. *Aetna Casualty & Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507, 1517 (9th Cir. 1991) ("A fundamental goal of CERCLA is to encourage and facilitate voluntary settlement"); *In re Acushnet River & New Bedford Harbor*, 712 F. Supp. 1019, 1027 n.13, 1028 (D. Mass. 1989); *City of New York v. Exxon Corp.*, 697 F. Supp. 677 (S.D.N.Y. 1988).

[4] *See also United States v. Western Processing Co.*, 756 F. Supp. 1424, 1430 (W.D. Wash. 1990); *Comerica Bank-Detroit*, 769 F. Supp. at 1414 (E.D. Mich. 1991); *American Cyanamid Co. v. King Indus.*, 814 F. Supp. 215, 219 (D.R.I. 1993); *Allied Corp. v. Acme Solvent Reclaiming*, 771 F. Supp. 219, 223 (N.D. Ill. 1990); *Lyncott Corp. v. Chemical Waste Management Inc.*, 690 F. Supp. 1409, 1418-19 (E.D. Pa. 1988).

        the amount of the released person's equitable share of the obligation determined in accordance with the provisions of Section 2.

Uniform Comparative Fault Act § 2, 12 U.L.A. 57 (1993 Supp.). Accordingly, *McDermott* established that the proportionate share rule of the UCFA governs all settlements where the issue is controlled by federal common law. Therefore, the UCFA must be applied to settlements of CERCLA claims (and all federal based claims) by a claimant other than the state or federal government. Federal courts have often ordered dismissal and bar of cross-claims against settling parties in order to facilitate settlement in environmental clean up cases. *Barton Solvents, Inc. v. Southwest Petro-Chem, Inc.*, 834 F.Supp. 342, 345 (D. Kan. 1993); *U.S. v. SCA Services of Indiana, Inc.*, 827 F.Supp. 526, 531 (N.D. Ind. 1993); *Comerica Bank-Detroit v. Allen Industries, Inc.*, 769 F.Supp.1408, 1414-1416 (E.D. Mich. 1991).

    B.    <u>The UCFA Applies To State Law Claims</u>.

All state law claims for contribution and indemnity by any non-settling defendant must be dismissed and barred under the UCFA. The rationale for dismissal of these claims is that unless the related state claims that arise out of the same set of facts and involve identical subject matter are also dismissed, the finality of the settlement gained by applying UCFA becomes meaningless. As a result, "courts have held that the contribution protection accorded to defendants settling their liability under CERCLA discharges related claims made under state law." *Hillsborough County v. A&E Road Oiling Service, Inc.*, 853 F.Supp. 1402, 1408 (M.D. Fla. 1994). A settling defendant freed from federal contribution claims, but not from state law claims, would gain little from the settlement payment. The incentive to reach settlement in federal actions would likely disappear under a policy that allowed related state law to survive imposition of a contribution bar. The policy of encouraging early settlement would be circumvented by lingering state law claims.

In *United States v. Pretty Products, Inc.*, 780 F.Supp. 1488, 1496 (S.D. Ohio 1991) the court explained that when cross claims, brought under legal theories other than contribution, serve to accomplish the same goal as the contribution claims—namely

1  restitution for cleanup and remediation costs—the dismissal of cross-claims is extended to
2  include the state law claims.  That case involved approval of a settlement between the
3  United States and private parties but the rationale for dismissing related state law claims is
4  applicable to settlement of claims between private parties.  This rationale should be applied
5  to the settlement between Plaintiffs and Chevron and the Court should bar all claims against
6  Chevron under the UCFA.

  C.  No "Good Faith" Hearing Is Required Under The UCFA.

Applying the UCFA forces the plaintiff "to obtain a settlement that is closely related to the probable proportionate share for which the settling defendant would have been responsible;" *Comerica Bank-Detroit v. Allen Indus., Inc.*, 769 F.Supp. 1408, 1414 (E.D. Mich. 1991).  It is appropriate that the principles of UCFA govern the effect of settlement of both federal and state law claims in this case.

In the context of private party settlements, no prior hearing on the settlement's fairness or good faith is necessary, required or desirable.  *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 1987 WL 27368 (N.D. Ill. Dec. 4. 1987); *see also Comerica Bank-Detroit v. Allen Industries Inc.*, 769 F.Supp. 1408, 1414 (E.D. Mich. 1991); *Allied Corp. v. Acme Solvent Reclaiming Inc.*, 771 F.Supp. 219, 223 (N.D. Ill. 1990).  The Court is not even required to evaluate the settlement amount and the manner in which the amount was calculated in order to approve the settlement.  *Edward Hines Lumber Co.*, 1987 WL at 27368.  Such an analysis is not necessary because, under the approach adopted by the federal courts with respect to private settlements, the non-settling defendants' liability is reduced by the settling defendants' proportionate share of liability.

In the Ninth Circuit, settlement agreements between the third-party plaintiffs and certain third-party defendants applying the proportionate credit rule used by the UCFA are favored.  *See United States v. Western Processing Co., Inc.*, 756 F.Supp. 1424 (W.D. Wash. 1990).  In *Western Processing*, the court ordered the third party plaintiffs' claims against the settling defendants be reduced by the amount of the settling defendants' equitable shares of liability.  *Id.* at 1430.  Significantly, the court noted that one of the advantages of

following the UCFA is that "the need for a good faith hearing is eliminated as the proportionate credit is not based on the amount of the settlement." *Id.* at 1431.

In *Comerica*, the court chose the UCFA approach and also concluded that it "negates the need for an evidentiary hearing to determine the fairness and good faith of the settlement." *Id.* at 1414. Similarly, the court in *Allied* also chose the UCFA approach because the principles of the UCFA were most consistent with CERCLA. The *Allied* court also favored the UCFA because it did not require a fairness hearing. A "fairness" hearing, according to the court, would be long, arduous and negate the benefits of settlement such as finality and reduced cost. *Id.* at 223. *See also McDermott*, 114 S.Ct. at 1469 ("No need for any hearing on the fairness settlement").

Here, as in the cases cited above, no fairness hearing is necessary for the Court to issue an order confirming the Settlement Agreement as a good faith settlement. Plaintiffs bear the risk that Chevron's proportionate share of the damages Plaintiffs attributed to municipal trash may be greater than the settlement amount, not the non-settling defendants. Consequently, there is no need for a fairness hearing, especially relative to its potential harm to the settlement process. *Allied*, 771 F. Supp. at 223.

D. The Settlement Also Satisfies The "Good Faith" Requirement of the California Code of Civil Procedure.

The only claims which Plaintiffs assert against Chevron are those related to surface contamination. *See* Tenth Joint Case Management Conference Statement, Dkt. No. 520. When the settlement reached between Chevron and Plaintiffs is examined in the context of Chevron's request for protection from state law claims, the Settlement Agreement easily passes muster for good faith.

The procedures for seeking a judicial determination of a good faith settlement are governed by the provisions of the Code of Civil Procedure Section 877.6. Cal. Code Civ. Proc. § 877.6. While not specifically defined in the statute, the phrase "good faith settlement" as used in the Code of Civil Procedure section 877.6 was construed in *Tech-Bilt. Inc. v. Woodward Clyde & Associates*, 38 Cal.3d 488. Thus, a "good faith" settlement

1  must be within the reasonable range of the settlor's proportional share of comparative
2  liability. *Tech-Bilt*, 38 Cal.3d at 499. Simply showing that a settlor paid less than his
3  theoretical proportionate share does not establish bad faith; the settlement is in good faith as
4  long as it is not grossly disproportionate to the settlor's estimated liability. *Id.* The party
5  asserting the lack of good faith has the burden of proof. Cal. Code Civ. Proc. § 877.6(d).

      1.   <u>Chevron's Settlement Satisfies the "Good Faith" Requirement of California Code of Civil Procedure Sections 877 and 877.6.</u>

8  Pursuant to California Code of Civil Procedure sections 877 and 877.6, the
9  settlement between Chevron and Plaintiffs effectively bars state and federal contribution
10 claims. Section 877 provides that a release given in good faith discharges the party to
11 whom it is given from all liability for contribution to any other parties. Cal. Code Civ.
12 Proc. § 877. The determination that a settlement is made in good faith is governed by the
13 provisions of California Code of Civil Procedure section 877.6. California Code of Civil
14 Procedure section 877.6(c) provides that a good faith settlement between the parties, bars
15 other joint tortfeasors or co-obligors from any further claims against the settling party for
16 equitable comparative contribution, or partial or comparative indemnity, based on
17 comparative negligence or comparative fault.
18 Chevron's alleged liability for damages is limited to "surface waste" on the 4-acre
19 area of the Property (Parcel 34), which Plaintiffs purchased in 2003 for $318,000. Chevron
20 is not alleged responsible for damage to the remainder of the Property, nor for any
21 groundwater contamination or soil gas vapor underneath the Property. Accordingly, the
22 $315,042 settlement payment easily satisfies the good faith requirements of California Civil
23 Code sections 877 and 877.6 when compared to Chevron's proportional liability for
24 Plaintiffs' surface waste claims.

      2.   <u>Chevron's Settlement is in the "Ball Park."</u>

26 In the seminal case of *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, the
27 California Supreme Court set forth a series of factors to be used in analyzing whether a
28 settlement was made in good faith: (1) a rough approximation of plaintiff's total recovery

1  and the settlor's proportionate liability; (2) the amount paid in settlement; (3) the
2  recognition that a settlor would pay less in settlement then it would if it were found liable
3  after a trial; (4) the existence of collusion, fraud, or tortious conduct intended to impair the
4  nonsettling defendant's interest; (5) and financial conditions and insurance policy limits of
5  settling defendants. *Id.* at 499.  In making its determination, the court must harmonize the
6  twin goals of equitable sharing of costs among the parties at fault, and encouragement of
7  settlements. *Id.* at 494. Not all of the factors set forth by the Supreme Court are applicable
8  to every case. *City of Grand Terrace v. Superior Court*, 192 Cal.App.3d 1251, 1261
9  (1987).
10  Chevron's $315,042 settlement is reasonably proportionate to Chevron's share of
11 liability for surface waste given that Chevron never deposited waste on the Property, but
12 merely leased the 4-acre area to Antioch for $55 in rent.  In addition, as discussed above,
13 this Settlement Agreement was achieved without any collusion, fraud, or tortious conduct
14 by either Chevron or Plaintiffs.  A "good faith" settlement need only be within the
15 reasonable range of the settlor's proportionate share of comparative liability.  *Tech- Bilt*,
16 38 Cal.3d at 499.  Chevron's settlement easily encompasses Chevron's potential liability as
17 a landlord, as well as risks associated with the presence of surface waste on the Property,
18 and is well within the good faith "ballpark" of *Tech-Bilt*.
19  Any further claims for contribution and indemnity or any claims arising out of or
20 sounding in equity against Chevron must therefore be barred by its good faith settlement
21 pursuant to California Code of Civil Procedure.
22  3.  <u>The Non-Settling Defendants are not Prejudiced by this Agreement.</u>
23  The inherent fairness of the Settlement Agreement between Chevron and Plaintiffs
24 allows the parties to achieve settlement while fully protecting the rights of the non-settlors'
25 rights.
26  Applying the UCFA principles to this case will also ensure that no prejudice inures
27 to the non-settling defendants.  Under the UCFA, Chevron's share of liability is
28 appropriately reallocated to Plaintiffs.  In light of this reallocation, "The existence of a

settlement is irrelevant to the liability of a non-settling tortfeasor." *Dobson v. Camden*, 705 F.2d 759, 770 (5th Cir. 1983), rev'd on other grounds on reh'g, 725 F.2d 1003 (5th Cir. 1984). Consequently, Plaintiffs, not the non-settling defendants, bear the risk of striking a poor bargain with Chevron.

The non-settling defendants in *Comerica* were also worried about protecting their rights. The court addressed their concerns, concluding that the UCFA approach,

> [d]oes not, however, hang the nonsettling defendants out to dry. . . . [s]ince the claimant bears the risk that the settling defendant's proportionate share of the clean-up costs may be greater than the settlement amount, it will be in the best interests of the claimant to obtain a settlement that is closely related to the probable proportionate share for which the settling defendant would have been responsible.

*Id.* at 1414. The non-settling defendants have had the same opportunity to participate in settlement, but have chosen not to settle with Plaintiffs. They cannot point to any prejudice or compromise of their rights. Plaintiffs and Chevron have agreed on a resolution of Plaintiffs' claims in good faith under an agreement that fully protects the non-settling defendant's rights under the UCFA in a manner that is consistent with the provisions and purposes of CERCLA and the California Code of Civil Procedure sections 877 and 877.6. Hence, each of the non-settling defendants has no basis, or reasons for that matter, to object to the Settlement Agreement.

> E.  <u>A Party Who Settles In Good Faith Must Be Discharged From Any Claim Of Liability For Indemnity Or Contribution Arising From The Action Or The Subject Matter Thereof</u>.

California Code of Civil Procedure § 877.6 states:

> (c) a determination by the court that the settlement was in good faith shall bar any other joint tortfeasor or co-obligor from any further claim against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

A good faith settlement operates to discharge the settling the party from liability to any other alleged tortfeasor for partial or comparative indemnity or contribution, regardless of whether the other alleged tortfeasors are presently parties to the plaintiff's action or have

1  ever been parties to the action. Code of Civil Procedure § 877.6, *Mill Valley Refuge Co. v.*
2  *Superior Court*, 108 Cal.App.3d 707 (1981), *Stambaugh v. Superior Court*, 62 Cal.App.3d
3  231 (1976).
4      Thus, causes of action for partial, comparative or total indemnity (including any
5  "deemed cross-complaints") are barred by a good faith determination.

6      F.   <u>The Non-Settling Defendants Have The Burden Of Proving That The
7           Settlement Is In Bad Faith</u>.

8      To demonstrate that the Settlement Agreement between Chevron and Plaintiffs is in
9  bad faith, any non-settling defendants must demonstrate that the settlement figure is grossly
10 disproportionate to what a reasonable person at the time of settlement would estimate the
11 settling defendant's liability to be.  The California Supreme Court in *Tech-Bilt* held that:

> The party asserting the lack of good faith, who has the burden of proof on that issue (C.C.P. §877.6(d)), should be permitted to demonstrate, if he can, that the settlement is so far "out of the ballpark" in relation to those factors as to be inconsistent with the equitable objectives of that statute.  Such a demonstration would establish as the purposed settlement was not a settlement made in good faith within the terms of §877.6.

16 *Tech-Bilt* at 499-500.
17     The settlement agreed upon in this matter is consistent with the *Tech-Bilt* principles.
18 The settlement amount is generous, and is well within a reasonable ballpark good faith
19 settlement figure for the surface waste claims alleged against Chevron.  Non-settling
20 defendants have a high burden to meet to prove Chevron's settlement is "grossly
21 disproportional" to its proportionate liability.  The non-settling defendants cannot meet that
22 burden as there is no evidence to support a claim that Chevron's settlement was "grossly
23 disproportionate" to its proportionate share of liability for surface waste.

IV. CONCLUSION.

For all of the foregoing reasons, Chevron, with Plaintiffs' support, requests the Court enter an order finding the Settlement Agreement between Chevron and Plaintiffs was entered into in good faith and bars all claims asserted or that may be asserted by any non-settling defendants against Chevron.

Dated: September 18, 2009.

>PILLSBURY WINTHROP SHAW PITTMAN
>BLAINE I. GREEN
>JEFFREY S. JACOBI
>MATTHEW K. YAN
>
>By:  /s/ Blaine I. Green
>
>Blaine I. Green
>Attorneys for Defendant Chevron U.S.A. Inc.